## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

JOE CAROLLO, an individual,                    **D.C. Docket No. 1:14-cv-23980-UU**

      Plaintiff,

vs.

CITY OF DORAL, FLORIDA, a municipal
corporation, LUIGI BORIA, an individual,
SANDRA RUIZ, an individual, and
CHRISTINE FRAGA, an individual,

      Defendants.

_____/

### AMENDED COMPLAINT

Plaintiff, Joe Carollo, by and through undersigned counsel, hereby amends his Complaint against Defendants, City of Doral, Florida, Luigi Boria, Sandra Ruiz, and Christine Fraga and alleges:

### Summary of the Claims

1.      As the saying goes: "No good deed goes unpunished." This case arises from claims under the First and Fourteenth Amendments of the United States Constitution, and violations of Florida's Whistle-blower's Act and the City of Doral Municipal Charter. No American citizen should suffer for exercising his First Amendment rights or for assisting local and federal authorities in their efforts to eliminate wrongdoing. Unfortunately, the City of Doral through its Mayor and certain Councilmembers ignored this simple and indisputable principle.

2.      When exposed to multiple instances of corruption and illegal conduct within the City Council, Mr. Carollo did not sit idly by. Instead, he "blew the whistle" by disclosing what he had learned to local and federal authorities, and cooperating with those agencies as they investigated the corruption. Unfortunately, this cost him his job when certain members of the

Doral City council, including the Mayor, retaliated against him for taking these actions.   As a result of the oppressive and wrongful conduct by the City and the Councilmembers, Mr. Carollo resorts to this Court to enforce his rights by seeking damages and equitable relief.

## The Parties, Jurisdiction, and Venue

3.      Plaintiff Joe Carollo ("Mr. Carollo") is, and at all times mentioned herein was, a resident of Miami-Dade County, Florida.

4.      Defendant the City of Doral, Florida ("the City") is, and at all times mentioned herein was, a municipal corporation organized and existing under the laws of the State of Florida, located at 8401 N.W. 53rd Terrace, Doral, Florida 33166.

5.      Defendant Luigi Boria ("Boria") is an adult individual residing in Miami-Dade County.

6.      Defendant Sandra Ruiz ("Ruiz") is an adult individual residing in Miami-Dade County.

7.      Defendant Christine Fraga ("Fraga") is an adult individual residing in Miami-Dade County.

8.      This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9.      Venue lies in the Southern District of Florida as this is where the cause of action accrued, and where the parties are located.

10.     All conditions precedent to the filing of this lawsuit have been performed, satisfied and/or waived.

## FACTUAL ALLEGATIONS

11.     On January 9, 2013, City of Doral Mayor, and chief executive officer, Luigi Boria ("Boria") proposed the appointment of Mr. Carollo for the position of City Manager.  The appointment was approved by unanimous vote of the Doral City Council (the "Council"), which was comprised of a total of five members, including the Mayor.  Mr. Carollo and the City entered into a contract that set forth their mutual agreement as to Mr. Carollo's employment as City Manager.

12.     As one of the top appointed public officials in the City, Mr. Carollo was responsible for most of the day-to-day administrative operations of the municipality, including preparing, monitoring, and executing the City budget, and hiring, supervising and removing City employees.  But, Mr. Carollo's management of the City was limited.  As described in the Charter for the City of Doral (the "Charter"), Mr. Carollo was called upon to "[e]nsure that all laws, provisions of this Charter and acts of the Council, subject to enforcement and/or administration by him/her or by officers *subject* to his/her direction and supervision, are faithfully executed." (Emphasis added).

13.     Accordingly, Mr. Carollo was not responsible for overseeing the conduct of the individual members of the City Council as members of the Council were not subject to his direction or supervision. Rather, as the City Manager, Mr. Carollo served at the behest of the City Council.  *See e.g.* Charter, § 3.01 ("The Manager shall be *responsible to* the Council for the administration of all city affairs") (emphasis added); § 3.03(2) (Manager shall "[d]irect and supervise the administration of all departments and offices but not City boards or agencies, unless so directed by the Council from time to time.").

A.      **CORRUPTION IN DORAL CITY COUNCIL**

14.     Disagreements between Mr. Carollo and Boria and certain other members of the Council arose shortly after Mr. Carollo's appointment as City Manager when various violations of Florida laws by these officials became apparent. Some of these violations are discussed below.

**1.     Boria Intends to Vote on Rezoning for Grand Floridian Project Despite Known and Obvious Conflicts of Interest**

15.     The Grand Floridian residential development project (the "Grand Floridian Project") involved the construction of luxury homes on a 17-acre plot within the City of Doral that was started in or about May, 2012. The owners and developers of the project were Juan Carlos Tovar ("Tovar"), a long time business associate of Boria with whom Boria has a debtor-creditor relationship, and Boria's children, Alexander Boria and Maria Lorena Boria. On information and belief, Boria loaned his children the monies necessary to obtain their interest in the Grand Floridian Project.

16.     Moving forward with the Grand Floridian Project required a Council vote to rezone a new parcel into the planned 17-acre development. Because of the close relationship with his business associate and his children, Boria had an obvious conflict of interest that would prevent him from voting on this project.

17.     In or around March, 2013 when Mr. Carollo visited the Miami-Dade County Commission on Ethics and Public Trust (the "Ethics Commission") to discuss an unrelated matter, Mr. Carollo was advised of Boria's potential conflict of interest as it related to his ties to the Grand Floridian Project and requirement for continual recusals.

18.     Thereafter, Mr. Carollo advised Boria and his family about the Ethics Commission's concerns and suggested he retain legal counsel.

19.     Hoping to assuage the Ethics Commission and retain his right to vote on the rezoning of the Grand Floridian project, Boria sought a legal opinion from the City Attorney confirming that Boria had no conflict of interest and could therefore vote on the Grand Floridian Project based on his claim that his children had sold their interest in the Grand Floridian Project to Tovar.   In doing so, however, Boria engaged in the following misconduct: (1) he misrepresented that the Chairman of the Ethics Commission, Joe Centorino, directly advised Boria that because his children sold their interest in the project Boria no longer had a conflict; and (2) he personally pressured the Doral City Attorney to prepare an opinion that Boria could vote on the zoning.

20.     To prevent embarrassment to the City as well as to protect Boria, Mr. Carollo and the City Attorney urged the developer of the Grand Floridian to defer the rezoning issue from the May 29, 2013 Meeting agenda, and advised him that if he refused, the City would.

21.     Oddly, the day before the Council Meeting, Boria's son, who Boria claimed had sold his interest in the project, contacted the City Attorney to demand that the issue remain on the agenda for the May 29, 2013 Planning and Zoning Meeting.

22.     Despite Boria's son's attempted meddling, the developer, as urged by the City Attorney and Mr. Carollo, agreed to request a deferral of the rezoning issue, and the Council deferred the vote to a later date.

23.     Concerns over Boria's conflicts with the Grand Floridian led other members of the Council to express serious concerns about the Grand Floridian Project, and caused them to defer voting on the rezoning for months to allow the Ethics Commission to prepare an opinion on the matter.   The Ethics Commission determined that Boria indeed had a conflict of interest, and

instructed Boria to recuse himself at any Meetings from voting on, or participating in, *any* matter involving Tovar or Boria's immediate family.

**2.      Boria Relies on a False Police Report by Tovar in an Attempt to Fire Carollo**

24.     There was no question that Tovar was upset with Mr. Carollo's insistence that a vote on the Grand Floridian Project be held in accordance with Florida law and the City Charter. Indeed, during the September 25, 2013 Meeting, following the vote on the Grand Floridian Project, Tovar who was visibly upset, approached Mr. Carollo, to threaten that he could get Mr. Carollo fired.  Mr. Carollo advised Tovar that he would not engage in further discussions and requested that Tovar leave.

25.     Tovar did not leave.  Instead, he abruptly interrupted the Council Zoning Meeting to express his displeasure with Mr. Carollo.  Boria allowed Tovar to speak until other members of the Council requested that he stop.  Not surprisingly, Boria did not allow Mr. Carollo to speak in response to Tovar's comments.

26.     After the Meeting concluded, Tovar met Councilwoman Ruiz, Ruiz's husband, and Pete Cabrera (former Councilmember, "Cabrera") at Divieto's, a restaurant in Doral.  The group met for approximately 30 to 40 minutes and dispersed.  Tovar then met with attorney Jesus Suarez ("Suarez") outside the restaurant and the two proceeded to the Miami-Dade Police Station where Tovar attempted to file a false police report against Mr. Carollo alleging that Mr. Carollo assaulted him earlier that evening.  The Miami-Dade Police declined jurisdiction and advised Tovar to file his report with the Doral Police Department, which Tovar did so that evening.

27.     The next morning, on September 26, 2013, Boria contacted the City Clerk to call a Special Meeting to be held September 30, 2013.  When the clerk initially requested the reason for the Special Meeting so as to notify the Council and provide public notice, Boria did not

provide one.   Shortly thereafter, Suarez sent an email to the City Clerk indicating that Tovar intended to sue Mr. Carollo and the City for the alleged assault.   Boria then informed the City Clerk that the meeting concerned the after-the-fact letter from Tovar's attorney.

28.   Boria's request for the Special Meeting was only days after the Ethics Commission instructed Boria not to get involved with any matter involving Tovar.

29.   The only Councilmembers present at the September 30, 2013 Special Meeting were Boria and Ruiz.   Due to failure of quorum, Boria requested that a new agenda item be placed on the October 9, 2013 Council Meeting agenda entitled "evaluation of the city manager".

30.   The truth concerning Tovar's claims against Mr. Carollo came to light when camera footage of the encounter between Mr. Carollo and Tovar on the day of the alleged assault proved there was no such assault, and that Tovar had, in fact, given false information for the police report.   Consequently, Tovar was arrested for making a false report against Mr. Carollo.

31.   Despite this setback to his efforts to remove Mr. Carollo as City Manager, Boria continued his crusade against Mr. Carollo.   At the October 9, 2013 Council Meeting, Boria cooked up new and different false allegations to support a vote for Mr. Carollo's removal.   Like the false police report debacle, these efforts too ended in failure.

32.   Indeed, at the October 9, 2013 meeting, Councilwoman Ana Maria Rodriguez expressed her view that Mr. Carollo should not be fired, and that the erratic behavior was not coming from the City Manager.   Similarly, Councilwoman Bettina Rodriguez Aguilera expressed her concern over Boria's erratic behavior including accusing Councilmembers of taking bribes and being afraid of Mr. Carollo.

**3.     Boria's Strong-Arm Tactics on the Doral Director of Planning and Zoning**

33.   During May and June, 2013, in an effort to avoid competition for the Grand Floridian Project (in which his children have an interest) and to get a head start on construction

of same, Boria sought to delay or block a development project known as Oasis Park Square (the "Park Square Project"), which is the second largest development project in Doral's history. Masoud Shojaee is the chief executive of the project's developer, Shoma Group.

34.     The only Councilmember opposed to the Park Square Project was Boria. Efforts to delay the Park Square Project included actions by Boria, Boria's chief of staff, and Boria's advisor, Ralph Arza ("Arza"), to pressure and harass Doral's Director of Zoning and Planning to either change his positive recommendations for the Park Square Project, or provide an opinion that the project would result in a deficiency in elementary school classrooms, so as to sway the vote at a second reading. Boria's conduct violated the Charter. *See* Charter, Section 4.02(c)(i) ("the Council or its members shall deal with officers and employees of the City who are subject to the direction and supervision of the manager solely through the Manager, and neither the Council or its members shall give orders to any such officer or employee, either publicly or privately").

35.     The Director of Zoning and Planning advised Mr. Carollo that Boria and Boria's group were pressuring him. Immediately, Mr. Carollo reported the Director's comments to Boria and advised Boria that his communications with the Director were improper and strictly prohibited by the Charter.

**4.     Boria Attempts to Coerce Mr. Carollo to Engage in Illicit Activity**

36.     In addition to Boria's attempt to strong arm the Director of Zoning and Planning in violation of the City Charter, on June 14, 2013, Boria ordered that Mr. Carollo demand Mr. Shojaee to provide three acres of the land from the Park Square Project to Arza for his clients for the purpose of building a charter school.

37.     Mr. Carollo advised Boria his demand was illegal and that Mr. Carollo refused to engage in such unlawful activity.

38.     Mr. Carollo reported the incident to the Doral Police Chief immediately thereafter, and requested the Police Chief set up a meeting with the Federal Bureau of Investigations ("FBI").

39.     On June 20, 2013, Mr. Carollo met with the FBI to provide information on this, and other incidents of corruption in Doral.

**5.     Boria and Ruiz Violate Campaign Finance Laws**

40.     During his election campaign, Boria housed his campaign headquarters in a shopping center.  Although the market rate rent for the space would have been approximately $4,000/month, Boria's campaign paid only $250/per month in rent.  This resulted in an illegal campaign contribution of approximately $25,000.

41.     During the run-off election for her Council seat, Ruiz spent thousands of dollars of unreported funds for campaign purposes in violation of Florida campaign laws.  Further violations occurred through a political action committee controlled by Ruiz involving the expenditure of unreported campaign funds.

42.     These instances of suspected or real campaign finance laws violations have been the subject of certain law enforcement investigations since early 2013, of which Mr. Carollo has participated.

**6.     Boria And Fraga Submit False Form 6 Disclosures**

43.     Form 6 is a set of financial disclosures that Doral public officials must complete under oath pursuant to Florida and Doral law.

44.     One of the mandatory disclosures is secondary sources of income, which requires "disclosure of major customers, clients and other sources of income to businesses in which [the filer] owns an interest."  There is no reporting requirement unless the filer owns 5% or more of a business and receives more than $1,000 in gross income from that business.  If these thresholds are met, the filer must list every source of income for the owned business that exceeds 10% of the owned business's gross income.

45.     These disclosures provide, amongst other things, full transparency to the public as to an elected official's financial relationships so as to avoid the potential of any conflicts of interest.

46.     On his 2011 and 2012 Form 6 submissions, Boria put N/A, meaning "not applicable," for secondary sources of income.  On information and belief, this is an untrue statement, which Boria made under oath.

47.     For example, during the relevant timeframe, Boria held more than a 5% interest in at least six companies and received more than $1,000 from each.  On information and belief, several of these companies received at least 10% of its gross revenue from one or more customers or clients.  Boria failed to list any such customers or clients in his Form 6 as required.

48.     Vice-Mayor Fraga owns two companies: South Florida Small Business Solutions, Inc. and City Select, Inc.  On information and belief, Fraga owns at least 5% of each company, and received more than $1,000 from each company in 2011 and 2012.   Yet, Fraga omitted disclosing her ownership interest in City Select, Inc. as required by Form 6, and despite her oath that her submission was complete.

49.     Furthermore, on information and belief, at least one customer or client of South Florida Business Solutions, Inc. provided more than 10% of the revenue of that company in 2011

and 2012.  Despite the Form 6 requirements and her oath, Fraga omitted those customers or clients.

50.     Mr. Carollo reported Boria's and Fraga's omissions to law enforcement agencies as described below.

**6.       Fraga Vote to Fire Mr. Carollo for Sale**

51.     On or about February 20, 2014, Boria advised Mr. Carollo that Boria could have gotten rid of him if he really wanted to do so because he was offered the third vote needed to remove Mr. Carollo in exchange for a sum of money.  Specifically, Boria told Mr. Carollo that one of Fraga's husband's relative had approached Boria and offered to provide Fraga's vote to terminate Mr. Carollo in exchange for a sum of money, the amount of which Boria did not disclose.

52.     Mr. Carollo then informed the head of public corruption of the FBI, the head of the ethics commission and the Doral police of the incident.

**B.       MR. CAROLLO EXPOSES THE CORRUPTION BY BORIA AND OTHER DORAL CITY COUNCILMEMBERS**

53.     Many of the violations referenced above and others reported by Mr. Carollo, were, and continue to be, the subject of investigations by law enforcement agencies.  In fact, Mr. Carollo was requested to participate in certain investigations on different occasions during his term as City Manager.

**1.       Campaign Finance Law Violations**

54.     It was not part of the Doral City Manager's ordinary job responsibilities to investigate, disclose, or participate in investigations concerning campaign finance law violations by the members of the City Council.

55.     However, in March, 2013 and June, 2013, Mr. Carollo participated in investigations by the Miami Dade Commission on Ethics & Public Trust ("Ethics Commission") in connection with certain disclosures made by Mr. Carollo concerning suspected or real violations of campaign finance laws by Ruiz and Boria.

56.     Mr. Carollo also disclosed the campaign finance violations by Boria and Ruiz to the Doral Police Department, who then reported the violations to the Miami-Dade Police Department Public Corruption Unit ("Public Corruption Unit").

57.     Mr. Carollo participated in these investigations by, for example, answering questions, making certain disclosures, and providing documentation.

58.     Upon information and belief, during all materials times hereto, Defendants were aware of Mr. Carollo's disclosures and participation in the investigations concerning campaign finance laws violations against the Councilmembers as stated herein.

**2.      Financial Disclosure (Form 6) Violations**

59.     It was not part of Mr. Carollo's ordinary job responsibilities to investigate, disclose, or participate in investigations concerning Form 6 violations or other financial disclosure laws applicable to the Councilmembers.

60.     Moreover, these violations occurred prior to the time Mr. Carollo was appointed the City Manager.

61.     Nevertheless, Mr. Carollo disclosed the violations by Boria and Fraga concerning Form 6 to the Ethics Commission as well as the Doral Police Department, who then reported the violations to the Public Corruption Unit.

62.     Mr. Carollo participated in these investigations by, for example, answering questions, making certain disclosures, and providing documentation.

63.     Upon information and belief, during all materials times hereto, Defendants were aware of Mr. Carollo's participation in the disclosures and investigations concerning the Form 6 violations against the Councilmembers as set forth herein.

**3.      Corruption By The City Council Members**

64.     It was not part of the City Manager's ordinary job responsibilities to monitor the behavior of the individual City Councilmembers or to ferret out whether they engaged in illegal conduct.  Nor was it part of the City Manager's ordinary job duties to investigate or report on voting improprieties by the City Councilmembers.

65.     It was also not part of the City Manager's ordinary job responsibilities to participate in law enforcement agency investigations concerning public corruption of the City Council.  However, when called upon by various agencies to participate in these investigations, Mr. Carollo thought it was his duty as a citizen to cooperate and assist in rooting out corruption for the benefit to the public.

66.     Specifically, Mr. Carollo reported the acts of corruption to the Doral Police Department, who then reported the information to the Ethics Commission and to the FBI. Commencing in or around June, 2013, the Ethics Commission and the FBI requested Mr. Carollo's participation in investigations of suspected or real corruption by Boria in connection with the Grand Floridian Project, and other suspected violations of law by Boria.

67.     At that time, Mr. Carollo also discussed with the Ethics Commission and the FBI acts of corruption by Ruiz.

68.     The matter relating to Fraga's vote as being offered for sale to Boria was also reported to the FBI.

69.     Mr. Carollo cooperated with the investigations by both the Ethics Commission and the FBI, and participated by, including, but not limited to, answering questions, making certain disclosures, and providing documentation.

70.     Mr. Carollo also participated in investigations concerning Boria's illicit activities with the Public Corruption Unit through the Doral Police Department.

71.     Upon information and belief, during all relevant times hereto, Defendants were aware of Mr. Carollo's disclosures and participation in these investigations.

**4.     Disclosures to the Public and the City**

72.     Carollo also made public disclosures concerning improper conduct by City Councilmembers.  In one instance, on October 15, 2013 at a Special Council Meeting, Mr. Carollo spoke for approximately two hours revealing matters of public importance, including, but not limited to: (1) corruption concerning the Grand Floridian project, (2) corruption surrounding the Oasis Park Square project; (3) violations of campaign finance laws by Boria; (4) concerns over the falsified Form 6 submitted by Boria for 2011 and 2012; (5) concerns with use of City money by Boria for his own public image campaign; and (6) questionable activity involving the Southland Towing contract with the City.

73.     In another instance, at the Council Meeting on February 19, 2014, Mr. Carollo disclosed other matters of public importance, including violations of the cone of silence law by at least one Councilmember, and the fact that Mr. Carollo had reported same to the Ethics Commission.

**C.     DEFENDANTS' UNLAWFUL RETALIATORY TERMINATION**

74.     Although Boria had Ruiz's vote in support of removing Mr. Carollo as of at least the Fall of 2013, the third necessary vote was not obtained until the Spring of 2014 when in an instant Fraga reversed her position concerning Mr. Carollo.

75. On the afternoon of April 23, 2014, Fraga called for a Special Meeting for "Administrative Evaluations."

76. On or about April 25, 2014, the City of Doral published its notice of a Special Council Meeting to be held on April 28, 2014 at 5:00 p.m.

77. According to the Agenda provided for in the Notice, the only item for discussion was an intentionally vague reference to "Administrative Evaluations." The Agenda was prepared by Fraga.

78. At the April 28, 2014 Special Council Meeting, a vote was taken to terminate Mr. Carollo as City Manager. Prior to the vote, Fraga alleged as a pretext for Mr. Carollo's termination that he caused a high turnover of key City employees and directors. This was a false statement.

79. The fact is, Mr. Carollo's termination was a retaliatory action taken against him due to disclosures he made to certain government agencies as well as to the public, and due to his participation in certain law enforcement agency investigations - not as a result of the ginned-up false grounds alleged by Fraga.

80. As set forth herein, each of Boria, Fraga, and Ruiz acted in bad faith and/or with malicious purpose and/or outside the scope of their duties, which acts are deemed *ultra vires*, and thus, pursuant to Fla. Stat. § 768.26, each of Boria, Fraga, and Ruiz are individually liable for the torts alleged herein.

**D.      THE CITY VIOLATES THE CITY'S CHARTER AND ORDINANCE**

81. The City violated the City of Doral Municipal Charter (the "Charter") on various occasions in connection with the unlawful termination of Mr. Carollo, including making false representations to the public, failing to follow proper procedure for calling a meeting, and failing

to follow proper procedures during a meeting.  Attached hereto as **Exhibit A** is a true and correct

copy of the Charter.

1.      **Fraga Made False Statements to the Public as the Basis for Mr. Carollo's Termination**

82.      The Citizens' Bill of Rights of the Charter, Section (A) provides:

This government has been created to protect the governed, not the governing.  In order to provide the public with full and accurate information, to promote efficient administration management, to make government more accountable, and to insure to all persons fair and equitable treatment, the following rights are guaranteed:

***

(2) *Truth in Government*.  No municipal official or employee shall knowingly furnish false information on any public matter, nor knowingly omit significant facts when giving requested information to members of the public.

83.      At the April 28, 2014 Special Council Meeting, Vice-Mayor Fraga made false

statements to the public as to the grounds for terminating Mr. Carollo.  Specifically, Fraga

represented that Mr. Carollo caused high turnover of key City administrative employees.

84.      Fraga's statement is false.  Most key City employees who left their positions

during Mr. Carollo's term left to pursue better or higher paying opportunities, and not because of

internal issues with Mr. Carollo or his policies.

85.      Vice-Mayor Fraga is a municipal official and employee of the City.  Fraga

knowingly provided false information to the public concerning the grounds for Mr. Carollo's

removal, which is a public matter.

86.      Accordingly, the City violated the Truth in Government guarantee of the Charter

when it made the above-referenced false statements about Mr. Carollo.

87.      Fraga also violated the Truth in Government guarantee when she purposefully

omitted from the Agenda the fact that a vote to terminate the City Manager would be discussed

at the Special Meeting, and thereby deprived the public of its opportunity to meaningfully participate in the Special Meeting.

**2.      The City Violated Proper Procedure for Calling a Special Meeting**

88.      Article IV, Section 4.01(a) of the Charter provides that "Special Meetings may be held on the call of the Mayor or Manager or upon the call of three Councilmembers and upon no less than 48 hours' notice to each member and the public…"

89.      Section 2-77(a) of the City of Doral Ordinances similarly provides:

Special meetings may be held on the call of the mayor or manager or upon the call of three Councilmembers and upon no less than 48 hours' notice to each member and the public, or such shorter time as a majority of the council shall deem necessary in case of an emergency affecting life, health, property or the public peace. **Such a request shall be transmitted in writing to the city clerk and city manager.** Only those items identified in writing by the mayor, city council or city manager as the reason for the special call meeting shall be placed on the agenda as substantive discussion items, unless a super majority four-fifths of the city council agrees to consider additional items. **The city manager shall be responsible for preparing the agenda for all special call city council meetings. Once the city manager has completed his/her review, the city manager shall deliver the items to the city attorney for review for legal sufficiency.**

(Emphasis added).   Attached hereto as **Exhibit B** is a true and correct copy of Doral City Ordinance 2-77(a).

90.      The Special Meeting held on April 28, 2014 was not called by the Mayor or the Manager, or by three Councilmembers as expressly required by the Charter.

91.      To the contrary, the Special Meeting was called solely by Fraga when she delivered notice of the meeting to the City Clerk who then dispersed the notice to the other members of the Council and to the Manager, Mr. Carollo.

92.      The notice delivered to the City Clerk included only one agenda item – "Administrative Evaluations."   Mr. Carollo immediately requested information concerning the nature of the "administrative evaluations", but Fraga refused to provide him any further information.   Instead, she stated that she would meet with Mr. Carollo that evening.

Conveniently, she never showed up, and subsequently, she failed to respond to Mr. Carollo's telephone calls.  Consequently, Mr. Carollo was unable to prepare the agenda or submit same to the City Attorney for his review as required by Doral City Ordinance 2-77(a).

93.     Nevertheless, the notice of the meeting was posted on Friday, April 25, 2014.

94.     Because the meeting was not called by the Mayor, the Manager or by three Councilmembers, and because Mr. Carollo was not provided information sufficient to prepare the Agenda or have the City Attorney review it, the Special Meeting of April 28, 2014 was called in violation of the Charter and Section 2-77(a) of the City Ordinances.

**3.     The City Violated the Charter by Failing to Allow Mr. Carollo to Participate during the Special Meeting**

95.     At the Special Meeting held on April 28, 2014, and prior to the vote to terminate Mr. Carollo, Mr. Carollo was not allowed to speak, despite two Councilmembers' demands that he be allowed to do so in order to address the allegations by Fraga.

96.     Article III, Section 3.03 provides that the Manager shall "[a]ttend all Council meeting and have the right to take part in discussion but not the right to vote."

97.     Accordingly, the City violated Section 3.03 when it refused to allow Mr. Carollo to take part in the discussion concerning his employment as Manager at the Special Meeting.

**4.     Other Violations of the City Charter**

98.     Article IV, Section 4.02(c)(i) provides:

Except for the purpose of inquiries and investigations made in good faith, **the Council or its members shall deal with officers and employees of the City who are subject to the direction and supervision of the manager solely through the Manager, and neither the Council or its members shall give orders to any such officer or employee, either publicly or privately**.  It is the express intent of this Charter that recommendations for improvement in City government operations by individual Members of the Council be made solely to and through the Manager.  **Members of the Council may discuss with the Manager and matter of City business; however, no individual Member of the Council shall give order to the Manager.**

(Emphasis added).

99.     The City violated Section 4.02(c)(i) when, for example, Boria, directly, and through others, improperly instructed Mr. Carollo to demand that the then Director of Planning and Zoning provide an adverse opinion on the Park Square Project for Boria's personal benefit, which Mr. Carollo refused to do.

100.    The City, through Boria, also violated this provision when it attempted to coerce the Director of Planning and Zoning directly, without the knowledge, consent, and outside of the presence of the Manager, Mr. Carollo.

101.    Additionally, Section 2.04 of the City Charter provides that only those electors "who have resided continuously in the City [of Doral] for at least two years preceding their Qualifying Date shall be eligible to hold the office of Councilmember or Mayor." Upon information and belief, Fraga did not meet the residency requirement of Section 2.04 prior to becoming elected as a Councilmember.

102.    Accordingly, the City violated Section 2.04 of the Charter when it failed to disqualify Fraga as an electorate for violation of the 2-year residency requirement.

103.    Ultimately, Mr. Carollo's termination was, and is, wrongful and in violation of the Constitution's First Amendment Right to Free Speech, Florida's Whistle-blower's Act of 1986, Section 112.3187 of the Florida Statutes, and the City of Doral Charter.

104.    Consequently, Mr. Carollo has hired the undersigned law firm to pursue this action for redress. Pursuant to Fla. Stat. § 112.3187, Mr. Carollo is entitled to costs of this action and reasonable attorney's fees.

<u>COUNT I</u>
**VIOLATION OF THE CONSTITUTIONAL RIGHT TO FREE SPEECH**
**(First Amendment Retaliation)**
**(Against all Defendants)**

105.    Plaintiff realleges ¶¶ 1 through 32, 36 through 71, 74 through 80, and 103 through 104  above, as though fully set forth herein.

106.    The United States Constitution's First Amendment guarantee to free speech applies to local and state governments through decisions of the United States Supreme Court, as well as through the Fourteenth Amendment.

107.    At all times relevant hereto, Mr. Carollo was an employee of the City of Doral.

108.    The City of Doral is a municipal government.

109.    During his term as the City Manager of the City of Doral, Mr. Carollo reported to, participated in, and made certain disclosures during investigations by local and federal government agencies as described in Section (B)(1)-(3), *supra*, including disclosures concerning campaign finance violation by Boria and Ruiz, Form 6 violations by Boria and Fraga, as well as acts of corruption by the said Councilmembers.

110.    The statements and disclosures made by Mr. Carollo to the state and federal government agencies, as well as to the public, involve matters of public concern, and Mr. Carollo was acting as a citizen when making said statements and disclosures.

111.    It was not within Mr. Carollo's ordinary job duties to make such statements and disclosures to state and federal authorities, or to the public.

112.    At all times material hereto, Defendants have been aware of Mr. Carollo's participation in the local and federal investigations and of certain disclosures he made.

113.    The statements and disclosures did not disrupt the function of the City of Doral.

114.     In violation of Mr. Carollo's First Amendment right to free speech, the City of Doral, acting through its Mayor and City Council, terminated Mr. Carollo's employment in retaliation for the statements and disclosures made by Mr. Carollo.

115.     As a result of the City's retaliatory termination in violation of the First Amendment, Mr. Carollo has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in the Plaintiff's favor against Defendants, jointly and severally, and award back pay, front pay, loss of fringe benefits, pre-judgment interest, and compensatory damages, and grant such other relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF FLORIDA'S WHISTLEBLOWER'S ACT
### (§ 112.3187, Fla. Stat. (2003)
### (Against Defendant City of Doral)

116.     Plaintiff realleges ¶¶ 1 through 104 above, as though fully set forth herein.

117.     At all times relevant hereto, Mr. Carollo was employed by the City of Doral as the City Manager.

118.     The City of Doral is a municipal government, and is considered a local government authority under Fla. Stat. § 112.3187(8)(b).

119.     The City of Doral's mayor, Luigi Boria, is considered a chief executive officer under Fla. Stat. § 447.203(9).

120.     During his term as the City Manager of the City of Doral, Mr. Carollo made certain disclosures and participated in investigations by local and government agencies, including those described in Section (B)(1)-(4), *supra*.

121.    The above referenced local and government agencies have the power to investigate, police, manage, or otherwise remedy the violations described in Mr. Carollo's disclosures.

122.    The disclosures described above involved violations or suspected violations of federal, state, and/or local laws or rules and present a substantial and specific danger to the public's health, safety, or welfare.

123.    The disclosures described above involve acts or suspected acts of gross mismanagement, malfeasance, misfeasance or gross waste of public funds, or gross neglect of duty by members of the Council.

124.    At all times material hereto, Defendants were aware of Mr. Carollo's participation in the above-referenced investigations, as well as certain disclosure to the investigative bodies.

125.    In retaliation for Mr. Carollo's disclosures and participation in such investigations, Mr. Carollo was damaged as he was terminated by the City of Doral on April 28, 2014.

126.    Mr. Carollo's termination was in violation of Florida's Whistle-blower's Act of 1986, § 112.3187 of the Florida Statutes.

127.    Mr. Carollo has retained the undersigned counsel to represent him in this litigation and has agreed to pay a reasonable fee for undersigned counsel's services.  Pursuant to Fla. Stat. § 112.3187(9)(d), Mr. Carollo is entitled to recover all reasonable attorneys' fees and costs incurred in this action.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in the Plaintiff's favor against Defendant City of Doral, and award the following:

a.      Compensation to Plaintiff for lost wages, benefits, and other remuneration;

b.      Assessment against Defendants of reasonable costs and attorney's fees of this action; and

c.      Such further relief as the court deems proper.

## COUNT III
## VIOLATIONS OF CITY MUNICIPAL CHARTER AND
## OF CITY OF DORAL ORDINANCE 2-77
### (Against all Defendants)

128.    Plaintiff realleges ¶¶ 1 through 104 above, as though fully set forth herein.

129.    The Municipal Charter of the City of Doral was adopted by the people of Doral to secure for themselves the benefits and responsibilities of home rule.  Accordingly, the Charter sets forth the rules governing the conduct of the City Council and its employees.

130.    The City violated the Charter on various occasions in connection with the unlawful termination of Mr. Carollo, including making false representations to the public, failing to follow proper procedure for calling a meeting, and failing to follow proper procedures during a special meeting.

131.    Specifically, the City violated the Citizens' Bill of Rights, Section (A)(2) which provides that "No municipal official or employee shall knowingly furnish false information on any public matter, nor knowingly omit significant facts when giving requested information to members of the public," when Fraga knowingly provided false reasons as grounds for terminating Mr. Carollo.

132.    The City, through Fraga, also violated Section (A)(2) when she purposefully omitted from the Agenda the fact that a vote to terminate the City Manager would be discussed at the Special Meeting, and thereby deprived the public of its opportunity to meaningfully participate in the Special Meeting.

133.     The City violated Article IV, Section 4.01(a) of the Charter which requires that all Special Meetings of the Council be called by "the Mayor or Manager or upon the call of three Councilmembers."  The Special Meeting held on April 28, 2014 was not called by the Mayor or the Manager, or by three Councilmembers as required by the Charter, but, instead was unilaterally called by Fraga.

134.     The City also violated Article III, Section 3.03, which provides that the Manager shall "[a]ttend all Council meeting and have the right to take part in discussion but not the right to vote," when it refused to allow Mr. Carollo to take part in the discussion concerning his employment as Manager at the Special Meeting.

135.     Moreover, the City violated Article IV, Section 4.02(c)(i), which prohibits the City Council from dealing directly with those officials or employees that are under the management or supervision of the Manager, as well as prohibits any Councilmember from giving orders to the Manager, when, for example, Boria requested that Mr. Carollo demand that the then Director of Planning and Zoning provide an adverse opinion on the Park Square project for Boria's own purposes.

136.     The City also violated this section when it attempted to coerce the Director of Planning and Zoning directly, without the knowledge, consent, and outside of the presence, of Mr. Carollo.

137.     Pursuant to Section 2-77(a) of the City of Doral Ordinances, Special Meetings may only be called by the mayor or manager or upon the call of three councilmembers and the request must be transmitted to the city clerk and the city manager.  The city manager shall be responsible for preparing the agenda for all special call city council meetings.  Once the city

manager has completed his/her review, the city manager shall deliver the items to the city attorney for review for legal sufficiency.

138.    The City violated Section 2-77(a) when it allowed Fraga to unilaterally call the meeting without providing information to Mr. Carollo sufficient to allow Mr. Carollo to prepare the agenda for the meeting, or to have the City Attorney review it.

139.    Lastly, the City violated Section 2.04 of the Charter when it failed to disqualify Fraga as an elector for Councilmember on account of her having failed to meet the Charter's 2-year residency requirement.

140.    As a result of the City's numerous violations of the Charter and the City Ordinance, Carollo has been damaged.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in the Plaintiff's favor against Defendants, jointly and severally, and award the following:

a.      Compensation to Plaintiff for lost wages, benefits, and other remuneration;

b.      Assessment against Defendants of reasonable costs and attorneys' fees of this action; and

c.      Such further relief as the court deems proper.

## <u>DEMAND FOR JURY TRIAL</u>

Mr. Carollo demands a jury trial of all claims so triable.

Respectfully submitted,

By:  s/Diana L. Fitzgerald
         _____

         Diana L. Fitzgerald, Esq.
         Florida Bar No. 15228
         Email Address: Diana@FILawyers.com
         David C. Isaacson, Esq.
         Florida Bar No. 81691
         Email Address: David@FILawyers.com
         Erica Cañas, Esq.
         Florida Bar No. 40787
         Email Address: Erica@FILawyers.com
         Fitzgerald & Isaacson, LLP
         1001 Brickell Bay Drive, Suite 1714
         Miami, FL 33131
         Telephone: (305) 372-7300
         Facsimile: (305) 372-8150
         Attorneys for Plaintiff Joe Carollo